UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKSON FIVE STAR CATERING, INC.,

      Plaintiff,

v.

JOHN R. BEASON and TAX CONNECTION WORLDWIDE LLC,

      Defendant.

Case No. 10-10010
Honorable Julian Abele Cook, Jr.

## ORDER

In this class action lawsuit, the Plaintiff, Jackson Five Star Catering, Inc. ("Jackson"), representing a class of similarly situated persons, claims that the Defendants, John R. Beason d/b/a Tax Connection World ("Beason") and Tax Connection Worldwide LLC ("Tax Connection"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by faxing advertisements without the recipients' invitation or permission. Currently pending are (1) the Plaintiff's motion to strike the testimony of the Defendants' expert witness, Ray Horak, (2) the Plaintiff's motion for summary judgment, and (3) the Defendants' motion for summary judgment.

I.

In January 2006, Tax Connection was contacted by Business To Business Solutions ("Business Solutions"), who offered to conduct an advertising campaign for the company. Business Solutions is not a party to this case. Beason - the sole owner of Tax Connection - approved an advertisement that was prepared by Business Solutions and paid $268 to have it transmitted to 5,000 fax numbers. (Abraham Dep. 35:4-7). Computer records indicate that 3,267 faxes were

successfully sent to 3,159 different telephone numbers on January 5, 2006. (Biggerstaff Report ¶¶ 13-15). Seven recipients declined to participate in this case, leaving a total of 3,260 faxes that were allegedly sent in violation of the TCPA.

II.

Jackson has moved to strike the expert opinion of Ray Horak, claiming that his affidavit violates Federal Rule of Evidence 702 because it (1) improperly offers legal opinions and (2) is not supported by a sufficient factual foundation. Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's skill, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court elaborated upon these requirements in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1998). Under the Rule, the trial judge must ensure the relevancy and reliability of all expert testimony. *Kumho*, 526 U.S. at 147; *Daubert*, 509 U.S. at 589. The inquiry into relevance "ensures that there is a 'fit' between the testimony and the issue to be resolved by the trial," while "[t]he reliability requirement is designed to focus on the methodology and principles underlying the testimony." *Greenwell v. Boatwright*, 184 F.3d 492, 496-97 (6th Cir. 1999). The relevancy requirement is satisfied so long as the expert testimony "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 590-91. With regard to the reliability requirement, the *Daubert* Court listed four factors a trial judge may consider when determining the reliability of a challenged methodology: whether the challenged methodology (1) can be or has been

2

tested; (2) has been subjected to peer review or publication; (3) is subject to a known or potential error rate; and (4) is generally accepted by the scientific community. *Id.* at 593-94. However, the *Daubert* Court made clear that these four factors do not constitute a "definitive checklist or test" and that no single factor is dispositive of the reliability inquiry. *Id.* at 593. Rather, the reliability inquiry must remain flexible. *Id.* at 594.

In his affidavit, Horak contends that it is likely that Business Solutions used the carrier Vonage to send the faxes because of "the number and nature of failed or errored faxes [sic] attempts." Horak does not offer any support for how he reached this conclusion. His cryptic statement regarding the "nature" of the failed attempts is not substantiated by any details or analysis. Nor does he (1) refer to any peer-reviewed literature indicating that Vonage fails at a specific rate as compared with other telephone providers or (2) otherwise substantiate his claim with facts in the record. There is no known or discussed rate of error in his method for proving that Vonage was the carrier based on the fax failure rate, nor has Horak presented evidence that his method is generally accepted in the scientific community. Most telling is his admission that this opinion is "subjective" and not supported by "hard evidence." (Horak Dep. 126-29, June 23, 2011). Thus, Horak's conclusion that Vonage was used to send the faxes will be stricken as unsupported by a sufficient factual foundation. *Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (experts not permitted to speculate).

Horak's assertion that "because Vonage access requires a broadband circuit and not a regular telephone line, faxes sent over Vonage do not fall under the TCPA" is a legal conclusion. A determination of the law is the province of the Court. Experts are not permitted to offer legal opinions. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

Horak next asserts that it is impossible to determine whether a fax sent by the broadcasting system was successfully received or printed by a fax machine rather than sent to a fax server. As discussed below, the TCPA does not require a fax to be received or printed. Nor does the TCPA exclude faxes sent to fax servers. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order adopted June 26, 2003, at ¶ 200, 18 FCC Rcd. 14014, 14133 (2003) ("We conclude that faxes sent to personal computers equipped with, or attached to, modems *and to computerized fax servers* are subject to the TCPA's prohibition on unsolicited faxes.") (emphasis added). In fact, the FCC expressly declined to recognize a distinction between fax machines and fax servers. *Id.* at 14133-34 ¶ 201-02. ("The TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images. . . . [B]ecause a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it."). The Court finds the FCC's reasoning to be persuasive. Consequently, the distinction between fax machines and fax servers is not relevant to the issues to be determined at trial.

As Horak's opinions are factually unsupported, legal conclusions, or irrelevant, the Plaintiff's motion to strike is granted.

### III.

The Court now turns to the parties' motions for summary judgment. The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317,

4

323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

IV.

Jackson alleges that the Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by hiring Business Solutions to transmit an unsolicited advertisement by fax to 3,260 recipients. The Defendants contend that (1) the claim against Beason as an individual must be dismissed and (2) the Plaintiff is precluded from raising a TCPA claim in federal court.

The Court will first address Beason's contention that the complaint should be dismissed against him in his individual capacity. He maintains that he may only be held individually liable if the Plaintiffs pierce the corporate veil, noting that corporations and its shareholders are "different entities in the eyes of the law." *Montgomery v. Cent. Nat'l Bank & Trust Co. of Battle Creek*, 267 Mich. 142, 147 (1934).

Although the Sixth Circuit has not ruled on this issue, many courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4074620 (W.D. Mich.) (quoting *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *see also, e.g.*, *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."). Where courts have declined to find personal liability, there has been little evidence of the corporate officer's

direct participation in the wrongdoing. *See, e.g.*, *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885 (S.D. Fla. Mar. 27, 2013).

In this case, Beason confirmed that he is the only person who has the authority to issue a check for the company. A check containing a memo line stating "5,000 fax ads" and "Client No: J121317" was issued to Business Solutions in the amount of $268. It was drawn on an account for Beason and signed by him. The Defendants do not dispute that Beason personally participated in the payment of and authorization for the fax ads. As a result, he is personally liable for the violation of the TCPA.

Next, the Defendants have moved for an entry of summary judgment on the ground that Michigan law precludes the Plaintiffs from filing a federal claim under the TCPA. They point to the text of the TCPA, which states, "A person or entity may, *if otherwise permitted by the laws or rules of court of a state*, bring in an appropriate court of that state . . ." (emphasis added). 47 U.S.C. § 227(b)(3). Citing to Michigan's version of the TCPA, they contend that Michigan law does not "permit" a plaintiff to bring any claim without first notifying the fax sender in writing that he or she does not consent to receiving faxes. Mich. Comp. Laws § 445.1776 ("A person . . . may file a civil suit . . . if the person notified the sender in writing that the sender did not have the person's consent."). Here, it is undisputed that none of the fax recipients notified the Defendants in writing that they did not have the required consent, which precludes the Plaintiff from filing a claim under the Michigan statute. The Defendants reason that if the Plaintiff is not permitted to file a claim under state law, any claim is also barred under the TCPA.

The Court will reject this interpretation for two reasons. First, Mich. Comp. Laws § 445.1776 does not mention the TCPA or purport to preclude a federal cause of action in any way.

The state law provides a cause of action that is entirely separate from the federal cause of action authorized by the TCPA. In other words, the federal and state statutes stand as separate avenues of recovery. This interpretation is supported by the Supreme Court's recent ruling in *Mims v. Arrow Financial Servs., LLC*, 132 S. Ct. 740 (2012).

Second, the cases relied upon by the Defendants were recently rejected by the authoring court. The Defendants urge the Court to follow the Second Circuit's interpretation of the TCPA in *Holster v. Gatco, Inc.*, 618 F.3d 214 (2d Cir. 2010) and *Giovaniello v. ALM Media, LLC*, 660 F.3d 587 (2d Cir. 2011), which allows a private TCPA action only if permitted by state law. The Court will decline this request, because the Second Circuit recently expressly disavowed this interpretation in *Giovanniello v. ALM Media, LLC*, 726 F.3d 106 (2d Cir. 2013). Basing its new decision on *Mims*, the Second Circuit reversed course and held that the "if otherwise permitted" language does not authorize "state courts to set the terms of TCPA claims." *Giovanniello*, 726 F.3d at 115. Rather, federal district courts are permitted to hear TCPA claims regardless of state law or court rules. As the interpretation espoused by the Defendants has now been rejected by the Second Circuit, the Court will deny the Defendants' motion for summary judgment.

The Court will next turn to Jackson's motion for summary judgment. Jackson argues that summary judgment is appropriate because there is no question of material fact regarding any of the elements of the TCPA claim. The TCPA prohibits "any person within the United States . . . from us[ing] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless the sender (1) has an established business relationship with the recipient or obtained prior permission to send the advertisement or (2) the recipient agreed to make its fax number available for public distribution. 47 U.S.C. § 227(b)(1)(c). The statute

authorizes $500.00 in damages for each unsolicited fax advertisement. 47 U.S.C. § 227(b)(3). If the Court determines that the defendant "willfully or knowingly" violated the statute, the Court may, in its discretion, treble the damages.

The Defendants contend that summary judgment is not appropriate because the fax advertisements were not transmitted by Tax Connection, but rather by Business Solutions. Other courts have rejected this argument. *See, e.g.*, Machesney *v. Lar-Bev of Howell, Inc.*, 10-10085, 2013 WL 1721150 at *1 (E.D. Mich. Apr. 22, 2013) (quoting *Alea London Ltd. v. American Home Sys., Inc.,* 639 F.3d 768, 776 (11th Cir. 2011)) ("Unfortunately for the businesses that [Business Solutions] offered [] services to, 'the TCPA is essentially a strict liability statute which imposes liability upon senders of unsolicited offenses.'"). The statute does not require a particular mental state on the part of the sender, except when awarding treble damages. *Id.* "The relevant FCC regulations define a 'sender' as 'the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." *Id.* (quoting 47 C.F.R. § 64.1200(a)(10)). Thus, the fact that Business Solutions transmitted the advertisement does not protect Tax Connection from liability under the TCPA as "the sender."

Beason next contends that summary judgment should be denied because the Plaintiffs have not produced an original fax to establish that the faxes were actually received. The statute, however, contains no such requirement. The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device, to *send*, to a telephone facsimile machine, an unsolicited advertisement." U.S.C. § 227(b)(1)(c) (emphasis added); *see also Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 1:09-CV-1162, 2013 WL 3654550 at *4 (W.D. Mich. July 12, 2013). Receipt is not

9

mentioned. Based on the statutory language, courts have consistently determined that a fax advertisement only needs to be sent, not received, to be actionable under the TCPA. *Am. Copper*, 2013 WL 3654550 at *5; *see also, e.g., A Fast Sign Company, Inc. v. Am. Home Servs., Inc.*, 291 Ga. 844, 846-47, 734 S.E.2d 31, 33 (Ga. 2012) (holding that the lower court erred when it determined that TCPA was actionable only when the fax was received); *Critchfield v. Taranto Grp., Inc.*, 263 P.3d 767, 778 (Kan. 2011) ("The statute creates no requirement that a transmission be received."); *Hinman v. M and M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009) (holding that the defendant could not avoid summary judgment on the basis of "false positives").

Finally, the Defendants submit that a question of material fact exists because the Plaintiffs have not established that anyone at Tax Connection authorized Business Solutions to send faxes to recipients who had not given permission. The Defendants offer no legal authority that holds the burden is on the Plaintiffs to prove the lack of permission. Two courts, on the other hand, have expressly rejected this argument. *UESCO Indus., Inc. v. Poolman of Wisconsin, Inc.*, 09 CH 16028 (Cir. Ct. Ill. June 9, 2011); *Collins v. Locks & Keys of Woburn, Inc.*, No. 2007-04207-BLS2 (Mass. Super. Ct. May 20, 2011). Those courts held that (1) the TCPA does not exempt from liability defendants who send a fax to someone outside of an intended marketing group, *see UESCO Indus., Inc.*, and (2) the burden to produce evidence that a fax advertisement was not unsolicited is placed on the sender, *see Collins* (citing *Lampkin v. GGH, Inc.*, 146 P.3d 847, 854-55 (Okl. Civ. App. 2006); *Am. Home Servs., Inc. v. A Fast Sign Co.*, 287 Ga. App. 161, 167 (2007)). These holdings follow the FCC's determination that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *In re Rules & Regulations Implementing the Telephone Consumer Act of 1991*, 10

FCCR 12391, 12407 (1995); *see also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25971 (2006). In this case, the Defendants authorized and paid for the advertisement to be faxed to thousands of recipients. As the senders, they are responsible for these faxes.

For the reasons stated above, the Jackson's motion for summary judgment is granted. It requests that the Court treble the amount of the statutory damages pursuant to 47 U.S.C. § 227(b)(3), which provides that "[i]f the court finds that the defendant willfully or knowingly violated this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." Jackson contends that the faxes were sent on purpose, rather than accidentally, and thus treble damages are warranted.

In its discretion, the Court will decline this request. The facts of this case mirror those of *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013). The *Bridgeview* court noted that the defendant was a small business owner who never sought a fax marketing company to send out faxes. *Id.* at *8. As it did with many businesses, Business Solutions contacted the defendants and offered to conduct a faxing campaign to generate business leads, despite the fact that this conduct is prohibited by the TCPA. *Id.* Business Solutions has recently been involved in dozens of cases where it illegally broadcast faxes for its solicited clients. *Id.* As a result, the court declined to issue an award for treble damages. This reasoning is both persuasive and applicable to this case. In the Court's determination, an award of treble damages is not appropriate.

V.

For the reasons that have been set forth above, the Court (1) grants the Plaintiffs' motion to strike the expert testimony of Ray Horak (ECF No. 56); (2) denies the Defendants' motion for summary judgment (ECF No. 61); and (3) grants the Plaintiffs' motion for summary judgment except for the Plaintiffs' request for treble damages, which is denied (ECF No. 48).

IT IS SO ORDERED.


Date: November 8, 2013                         s/Julian Abele Cook, Jr.
                                               JULIAN ABELE COOK, JR.
                                               U.S. District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 8, 2013.

                                               s/ Kay Doaks
                                               Case Manager